**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000542**
**08-SEP-2025**
**08:08 AM**
**Dkt. 44 SO**

NO. CAAP-23-0000542

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

M.S., Plaintiff-Appellee, v.
L.S., Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(CASE NO. 5FDV-22-0000174)

**SUMMARY DISPOSITION ORDER**
(By: Hiraoka, Presiding Judge, McCullen and Guidry, JJ.)

L.S. (**Wife**), representing herself,[1] appeals from the *Decree Granting Absolute Divorce and Awarding Child Custody* entered by the Family Court of the Fifth Circuit on September 6, 2023.[2]  We affirm.

M.S. (**Husband**) filed for divorce from Wife on October 6, 2022.  Trial was held on May 1, 2023.  The Family Court entered *Findings of Fact and Conclusions of Law* on June 14, 2023.  The Decree was entered on September 6, 2023.  This appeal followed.

Wife's opening brief does not comply with Rule 28(b) of the Hawaiʻi Rules of Appellate Procedure (**HRAP**).  Hawaiʻi courts have a policy of giving all parties the chance to have their cases heard on the merits, where possible.  <u>Schefke v. Reliable</u>

---

[1]     Wife has a law degree.

[2]     The Honorable Robert Goldberg presided.

Collection Agency, Ltd., 96 Hawaiʻi 408, 420, 32 P.3d 52, 64 (2001).  To promote access to justice, we do not automatically foreclose self-represented litigants from appellate review if they don't comply with court rules.  Erum v. Llego, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020).

The family court has wide discretion in making its decisions, and we review them for abuse of discretion.  Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).  With that standard in mind, we address what we discern to be Wife's arguments.

**(1)**  Wife argues the Decree should be vacated because she wasn't served with Husband's amended income and expense statement, amended asset and debt statement, amended witness list, exhibit list, or exhibits 1-20 before the trial.  That, she contends, violated her constitutional right to due process.

Husband's process server filed a proof of service on April 16, 2023.  It shows he served the documents on Wife at the Federal Detention Center Honolulu, where she was being held, on April 13, 2023.  Husband's counsel filed a certificate of service on August 16, 2023.  An amended proof of service, signed by the process server, was filed on August 18, 2023.

Wife states the trial judge "made findings that there was no proof that wife was ever served those documents, and wife put on the record that she never received said documents."  The Findings of Fact and Conclusions of Law contain no such finding. Wife didn't request a transcript of the trial, see HRAP Rule 10(b)(1)(A), and doesn't cite to where in the record she claimed to have never received those documents, see HRAP Rule 28(b)(7).  We are not obligated to search the record for information that should have been provided by Wife.  Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007).

Even if Wife wasn't served with the documents before trial, the record does not show that Wife objected to the Family Court considering them.  Wife could have asked for a continuance

2

so she could study the documents, but she does not cite to the record where a request to continue was made or, if one was made, where it was denied by the Family Court. Nor does Wife make an offer of proof about what witnesses she would have called, or what evidence she would have tried to introduce, to controvert information in Husband's amended income and expense or asset and debt statements.

Under these circumstances, we decline to consider Wife's argument.

**(2)** Wife also argues she should have been awarded portions of Husband's 401(k) qualified profit-sharing plan and pension plan under the "Linson Formula" and Hawaii Revised Statutes (**HRS**) § 580-47.

Linson v. Linson, 1 Haw. App. 272, 618 P.2d 748 (1980), "present[ed] the issue of whether the nonvested retirement benefits of one spouse constitute part of the 'estate of the parties' under [HRS] § 580-47 and are therefore subject to division and distribution by order of the family court upon granting a divorce." Id. at 273-74, 618 P.2d at 749. We held that "estate of the parties" meant "anything of present or prospective value, and therefore . . . a spouse's nonvested military retirement benefit constitutes part of the estate of the parties under HRS § 580-47." Id. at 278, 618 P.2d at 751. We based our decision on equity. Id. at 277, 618 P.2d at 750-51. We did not prescribe a "formula" for dividing or distributing retirement benefits.

HRS § 580-47 (2018) authorizes the family court to divide and distribute the estate of the parties — which under Linson includes retirement benefits. The family court must consider "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, . . . and all other circumstances of the case." HRS § 580-47(a).

Husband argued to the Family Court that although he and Wife had been married for 26 years,

the last 7 years "have been years of utter turmoil with FBI raiding the marital home twice (once in 2016 and again in 2019) and with [Wife] ultimately going to Federal Detention Center in Honolulu in 2019 where she has not been released since. No outsider really knows when [Wife] started to engage in criminal activities which resulted in her arrest and conviction but it is undisputed that their "marital relationship" as Husband and Wife ended in 2016/2019 wherein this is not the case where Husband had filed for divorce for no reason after 26 years of marriage. It is safe to say the "marriage" as we know it in a conventional manner ended in 2016, thus, the duration of "true" marriage is only 19 years.

. . . Further, due to the acts of [Wife], [Husband]'s standard of living went down significantly where [Husband] lost his family home and has become a hoarder [sic] living at his daughter's house in exchange for sharing and paying for living expenses. He basically came down from being a homeowner owning a $1.4 million-dollar house to a man without a house at age 50. . . .

. . . .

. . . [Husband] has been a stevedore with Young Brothers for the last 23 years. As to [Wife]'s occupation, there is a belief that [Wife] was working "doing some sort of non-profit thing" "where she was getting scholarships and grants for Kauai students" but since her activities resulted in conviction and 17-year sentence with $2.4 million dollars in forfeiture and $3.3 million dollars in restitution judgment, it is hard to say what occupation she had during marriage. It is safer to say, [Wife] did not make any financial contribution through her employment during their marriage. Rather, [Wife] caused huge financial loss to assets of the parties and the asset[s] of [Husband] through her actions. Good example is that despite her "working", [Wife] has nothing in assets except for her small bank account at Central Pacific Bank whose balance, per [Wife]'s filed asset and debt statement was $25.00 on November 15, 2022.

. . . [Wife] has a law degree and Ph.D. The fact that [Wife] will not be employable for the next 17 years during her period of incarceration should not be used in a normal sense of someone being "not employable" as her incarceration was brought onto herself by her own actions. If this was a normal divorce where the parties were divorcing, [Wife] would have continued her work doing some sort of grant application work and will be advancing in her work given her two (2) doctorate degrees. It is in fact, [Husband], who is a blue-collar worker working as a stevedore ([Husband] operates cranes that lift and stack Matson containers on and off the ship) who is less educated. One cannot punish the hard worker and reward someone who used the skills and knowledge she had acquired through her two (2) doctoral degrees who had chosen the path of criminal activity which is sending her to 17 years of prison life.

. . . [Husband] has the need for money as he has no house, very little in retirement and very little money in

4

his bank accounts (See, [Husband]'s filed asset and debt and income and expense statements). [Husband] has been since 2019 and will be solely responsible to provide for their minor son without any financial assistance from [Wife]. [Husband] NEEDS all of the monies he will be earning as stevedore. [Wife] has no need as she will have shelter, food and other guarantees as provided by federal law protecting prison inmates.

. . . .

. . . [Husband] has been left in financial ruins due to [Wife]'s actions. First, even after 23 years of employment at Young Brothers Limited where he believed he was putting aside the maximum allowable portion (15%) of his wages each year into his 401(k) account, the vast majority has been withdrawn by wife and after 23 years, he only has $70,000.00 in 401(k). [Husband] could not get any records prior to 2017, but, did testify that he was putting aside the maximum allowable amount towards 401(k) from each and every pay check. By deductive reasoning, [Husband] would have had at least $500,000.00 in 401(k) after 23 years of employment at Young Brother Limited. But, rather, he only has $70,000.00. Second, [Husband] lost his home which he inherited from his parents, the house he grew up in. Though the family was able to keep the house in the "family", it is now owned by his daughter and her husband wherein [Husband] is no [sic] other than a free-loader. [Husband] can get kicked out by his daughter with no legal recourse to fight such eviction. Thirdly, [Husband] has had to provide for his minor son on his own since 2016/2019 and will be so providing for his minor son for the next several years.

Some of those arguments were made in the context of Wife's request for alimony, but they are still factors the Family Court could consider under HRS § 580-47 to equitably divide Husband's 401(k) and pension plan. See Myers v. Myers, 70 Haw. 143, 148, 764 P.2d 1237, 1241 (1988) (noting that HRS § 580-47 "gives to the family court the discretion to divide marital property according to what is just and equitable").

Wife does not challenge the Family Court's findings of fact, which are binding on appeal. Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002). The Family Court found:

The parties were an intact family until July 2019 when [Wife] was arrested and imprisoned at Federal Detention Center in Honolulu, Hawaii. The Parties have never lived together since and [Wife] has remained in custody since 2019 and is still in custody at Federal Detention Center in Honolulu, Hawaii. . . .

. . . .

5

[Wife] testified that she has a debt stemming from the Restitution Order/Sentence of her criminal conviction. Wife did not seek any contribution from Husband to pay-off the restitution she owes as a part of her federal conviction sentence in the amount of "over $3.3 Million Dollars" (per the filed Judgement at Federal Court, the accurate amount is $3,396,035.15)[.[3]]

. . . .

[Husband] took a position at trial that he shall be awarded his two retirement accounts and policies, to wit, his Salchuk [sic] 401(k) and the pension plan with his employer, Salchuk [sic], dba, Young Brothers Limited, as his sole and separate property and Wife shall not be entitled to receive any portion thereof.

[Wife] took a position that having been married to Husband for 26 years that she is entitled to receive the "Linson" share as a matter of law.

. . . .

Court finds, applying the facts of the case, that, it is just and equitable that each party shall be awarded his and her own retirement accounts, policies and benefits that are titled in their own names and the other Party shall have no claim thereto. Husband shall be awarded the 401(k) account and his pension plan through his employer, Salchuk [sic], dba, Young Brothers Limited as his sole and separate property and Wife shall have no claim thereto.

Court finds that the Wife has already withdrawn $71,184.281 [sic] from Husband's retirement account between 2017 to 2023 without Husband's consent; there was no testimony as to what Wife did with the money.

. . . .

. . . Further, Wife has a debt/restitution to IRS in the approximate amount of $1.9 Million Dollars, to State of Hawaii Tax Collector in the approximate amount of $790,000.00 and Wife has agreed that she shall be responsible for her own debts.

. . . .

. . . [Wife] acknowledged that she entered into a plea agreement where she pled guilty to three counts of wire fraud in exchange for dismissal of the rest of the charges in her indictment. [Wife] testified that she was duly

---

[3]     We take judicial notice under Rule 201, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016), of the *Judgment in a Criminal Case* entered in <u>United States v. Sullivan</u>, Case No. 1:17-cr-00104-JMS-KJM, Doc. 1530 (D. Haw. Mar. 31, 2023). Wife pleaded guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343. She was sentenced to 204 months (17 years) in prison, three years of supervised release, payment of $3,396,035.15 in restitution, and forfeiture of $2,012,741.92 to the United States. Wife appealed. The Ninth Circuit affirmed. <u>United States v. Sullivan</u>, Nos. 23-573, 23-575 (9th Cir. Oct. 9, 2024) (Mem.).

> sentenced by Judge Seabright on March 28, 2023 for 17-year imprisonment, 3 years of supervised release and the payment of $3,396,035.15 in restitution.
>
> . . . .
>
> Further, [Wife] testified and acknowledged in her own pleadings that were submitted that she has the Juris Doctorate Degree and Ph. D.   [Wife] did not testify that she had been stripped of those degrees due to her federal conviction.
>
> To the contrary, [Husband] is the lesser educated party with only a Bachelor's degree from University of Hawaii.   [Husband] testified that he has been working for Young Brother Limited as the [sic] stevedore for the last 20 years.
>
> . . . .
>
> Further, it is undisputed that [Wife] would need tons of money to pay the $3.3 million XXXXXX she would need to pay in restitution once she is released from prison.   But, her "need" to pay restitution is based on her own criminal act and has nothing to do with the marriage or what Husband had done.   In fact, Husband was never indicted by the federal government for anything relating to what [Wife] had done.

Under these circumstances, we cannot say the Family Court abused its discretion by not awarding Wife any portion of Husband's 401(k) qualified profit-sharing plan or pension plan.

Wife's opening brief makes no other discernible arguments.  The *Decree Granting Absolute Divorce and Awarding Child Custody* entered by the Family Court on September 6, 2023, is affirmed.

DATED: Honolulu, Hawai'i, September 8, 2025.

On the briefs:

L.S., Self-represented
Defendant-Appellant.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge